IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN D. E., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-CV-517-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Kevin D. E. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.    Procedural History and the ALJ's Decision**

Plaintiff, then a 45-year-old male, protectively applied for Title II and Title XVI disability benefits on January 30, 2017, alleging in both applications a disability onset date of September 11, 2016. R. 15, 230-237. Plaintiff's claims for benefits were denied initially on May 17, 2017, and on reconsideration on August 31, 2017. R. 65-93, 124-132; 94-123, 142-155. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on October 25, 2018. R. 35-64. The ALJ issued a decision on November 13, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other jobs existing in the national economy. R. 15-29. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

Plaintiff met the insured requirements for Title II purposes through June 30, 2021. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 11, 2016. R. 20. At step two, the ALJ found that Plaintiff had the severe impairments of blindness in the left eye; intermittent explosive disorder; major depressive disorder; and generalized anxiety disorder. *Id.* At step three, the ALJ found that Plaintiff had no impairment or

combination of impairments that was of such severity to result in listing-level impairments. R. 20-22. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitation in the functional areas of interacting with others, and concentrating, persisting, or maintaining pace; and mild limitation in the functional areas of understanding, remembering, or applying information; and adapting or managing oneself. R. 21.

After evaluating the objective and opinion evidence, and Plaintiff's statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of light exertion work" with the following limitations:

> Nevertheless, he is unable to climb ropes, ladders, and scaffolds, and is unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. He is blind in the left eye and is further limited to tasks requiring depth perception or night-vision tasks only occasionally. He is able to understand, remember, and carry out simple instructions in a work-related setting, and is able to interact with co-workers and supervisors under routine supervision, but is unable to interact with the general public more than occasionally, regardless of whether that interaction is in person or over a telephone. He is afflicted with symptoms from a variety of sources to include vision impairments, moderate intermittent pain and fatigue, as well as mental impairments and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to him at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations.

R. 22. At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. R. 26-27. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled, light work, such as Motel Housekeeper (SVP 2), Bakery Racker (SVP 2), and Electrical Accessory Assembler (SVP 2). R. 27-28. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 28. Accordingly, the ALJ concluded Plaintiff was not disabled.

### III. Issues

Plaintiff raises three allegations of error on appeal: (1) the ALJ's RFC is not supported by substantial evidence; (2) the ALJ's consistency findings are not supported by substantial evidence;

and (3) the ALJ failed to follow testimony from the VE which was favorable to Plaintiff. ECF No. 13 at 4-5.

IV. **Analysis**

    A. **RFC is Supported by Substantial Evidence**

Plaintiff contends that substantial evidence does not support the ALJ's RFC. Plaintiff argues that the ALJ failed to properly evaluate the records of Robert Zoellner, O.D., regarding Plaintiff's right eye impairment, and the consultative examination findings of Alyssa Rippy, Ph.D., regarding Plaintiff's mental impairments. ECF No. 13 at 5-8.

        1. **Physical RFC/Dr. Zoellner**

Plaintiff argues that the ALJ failed to incorporate the February 11, 2016, examination of Dr. Robert Zoellner, Plaintiff's eye doctor, of his visual acuity of 20/200 in the left eye and 20/80 in the right eye (uncorrected), favoring instead a consultative examination performed by Harold DeLaughter, D.O. who found 20/200 in the left eye and 20/50 in the right eye (corrected). ECF No. 13 at 6. Plaintiff argues the ALJ failed to properly evaluate Dr. Zoellner's "opinion," in violation of principles set forth in *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003), and *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), specifically regarding the vision in his right eye.

The Court rejects Plaintiff's argument that the ALJ failed to provide specific, legitimate reasons for rejecting the opinions of Dr. Zoellner, the doctor who performed the earlier eye examination. Plaintiff repeatedly faults the ALJ for failing to include the "more severe visual impairment" of 20/80 vision in his right eye found by Dr. Zoellner. However, the ALJ discussed this examination (performed by Dr. Moore of Dr. Zoellner's office) at step three's severity discussion and in his RFC discussion. R. 20-21, 24. The February 11, 2016, records from Dr. Zoellner's office show an examination performed by Kari Moore, O.D. (R. 305), which state "blindness, one eye, unspecified eye." R. 308. This is not an "opinion" of functional limitations

5

that required weighing by the ALJ. *See Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) (unpublished) ("[T]here was no opinion on [claimant's work-related functional limitations] by [claimant's doctor] for the ALJ to weigh.").

The 20/80 vision assessment of the right eye that Plaintiff complains the ALJ should have accepted is an *uncorrected* vision evaluation, compared to the *corrected* 20/50 vision evaluation from Dr. DeLaughter's examination, which the ALJ gave "some weight." *Compare* R. 305 and R. 346. The ALJ properly evaluated the opinions of agency physicians, Dr. Khan and Dr. Boatman, who also considered the records from Dr. Zoellner's office and Dr. DeLaughter's consultative examination. *See* R. 71-75, 84-86, 100-103, 114-117. Both agency physicians determined that Plaintiff's "best corrected visual acuity" was "OU: 20/50 OS: 20/200 OD: 20/50."[1] The ALJ accepted Dr. Khan's and Dr. Boatman's determinations that Plaintiff "could perform work activity with limited bilateral visual acuity that avoided concentrated exposure to hazards" in forming his RFC. R. 26. The ALJ did not render his own medical opinion or pick and choose through an uncontradicted medical opinion, as argued by Plaintiff. The records from Dr. Moore of Dr. Zoellner's office are not "an uncontradicted medical opinion" that the ALJ needed to exhaustively examine.

### 2. Mental RFC

Plaintiff argues that the ALJ's mental RFC "downplays the Plaintiff's actual mental condition." ECF No. 13 at 7. Specifically, Plaintiff argues the ALJ (1) erred by finding that Plaintiff "can interact with [] co-workers, supervisors and the public at any level," because those findings are not based on substantial evidence, and (2) failed to "explain how someone with Intermittent explosive disorder would be able to work with co-workers, supervisors and the

---

[1] In eye examination terms, OU represents both eyes (oculus uterque); OS represents the left eye (oculus sinister); and OD represents the right eye (oculus dexter). *See* https://www.aao.org/young-ophthalmologists/yo-info/article/learning-lingo-ophthalmic-abbreviations (last visited 3/17/2021).

public." ECF No. 13 at 7-8. Plaintiff relies heavily on the consultative examination of Alyssa Rippy, Ph.D., to support his claims that his anger issues cause him to be a "time-bomb that could go off at any time." *Id.* at 8.

Plaintiff's argument fails. At step three and in determining the mental RFC, the ALJ thoroughly discussed Plaintiff's limited mental health treatment history. *See* R. 20, 21, 22-26. The ALJ noted that Plaintiff did not pursue significant ongoing mental health treatment and was not always compliant with such treatment when sought. R. 24-26. As discussed by the ALJ, Plaintiff reported not receiving any current mental health treatment in August 2016 (R. 378), not taking any psychiatric medication in January 2017 (R. 370), depleting psychiatric medication and being out of such medication for "a[]while[,]" in July 2017 (R. 398), being out of psychiatric medication in December 2017 (R. 402), not engaging in mental health treatment for over six months in June 2018 (R. 440), and being out of psychiatric medication for a week in August 2018 (R. 407). The ALJ appropriately considered and discussed records discounting the severity of Plaintiff's mental condition. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (noting absence of treatment); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing symptoms, ALJ may consider extensiveness of attempts, medical and nonmedical, to obtain relief); *see also Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) (ALJ reasonably found claimant failed to follow treatment).

Further, the ALJ noted objective medical evidence of Plaintiff's mental functioning supporting his decision (R. 24-26), including: findings by Dr. Rippy that Plaintiff was cooperative and demonstrated appropriate affect, eye contact, and relevant, goal-directed thoughts in August 2016 (R. 377, 379 (cited as Exhibit 7F)); findings by Charles van Tuyl, M.D., Plaintiff's treating psychiatrist, of good eye contact, normal speech, a logical thought process, fair memory, and fair attention and concentration, in January 2017 (R. 371 (cited as Exhibit 6F)); findings by Dr. van Tuyl of good eye contact, normal speech, a logical thought process, good judgment and insight,

7

good memory, and good attention and concentration in February 2017 (R. 362 (cited as Exhibit 6F)); findings by Dr. van Tuyl of a calm, happy mood, a normal affect, good memory, and good attention and concentration in April 2017 (R. 384 (cited as Exhibit 8F)); findings by Heather Campbell, M.D., a treating physician, of adequate memory and adequate attention and concentration in July and December 2017 (R. 399, 403 (cited as Exhibit 8F)); findings by J. Bryan Cates, D.O., a treating psychiatrist, of a normal affect, a goal-directed thought process, and intact memory in June 2018 (R. 442 (cited as Exhibit 9F)); and findings by a treating mental health care provider of appropriate mood/affect and a normal thought process in August 2018 (R. 407 (cited as Exhibit 9F)). Objective medical evidence is a useful indicator in making reasonable conclusions about symptom intensity and persistence. *See* SSR 16-3p. These favorable objective medical findings provided substantial evidence supporting the Commissioner's decision.

  The ALJ also noted that psychiatric medication was somewhat effective, and that Plaintiff's symptoms worsened when not taking medication. R. 24, 26. Plaintiff reported that treatment was somewhat effective, including improved mood stability, sleep, and social interaction, and worsening without medication. R. 51, 361, 383, 398, 409, 440. As the ALJ also noted (R. 25), Dr. Rippy concluded that Plaintiff would benefit from mental health treatment. R. 380. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (effectiveness of treatment). Plaintiff had no history of mental hospitalization, despite his allegedly disabling long term mental complaints. R. 378. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (ALJ must consider type of treatment when considering a claimant's statement regarding symptoms).

  Regarding opinion evidence, Burnard Pearce, Ph.D., and Ryan Jones, Ph.D., state agency psychologists, concurred that Plaintiff was able to perform simple tasks with routine supervision, meet the general demands of a work environment, relate to supervisors and coworkers for incidental work purposes, and perform work allowing avoidance of any interaction with the

general public. R. 73-75, 86-88, 103-105, 117-119. These opinions were supported by the objective medical findings noted above. As the ALJ noted, these opinions were also supported by Plaintiff's own reports that he could manage personal finance tasks and maintain a relationship with a significant other, and Plaintiff's abilities to respond to questions from medical providers and to provide information about his health. R. 21, 23, 25. Plaintiff reported that he resided with his significant other to whom he was engaged (R. 43, 407); that he did not need special reminders to go places (R. 282); that he could go out alone (R. 281-282), manage personal finance tasks (R. 281); make decisions without difficulty (R. 379); and that his condition did not affect his abilities to complete tasks, to concentrate, to understand, or to follow particularly written instructions (R. 283). Further, Dr. Rippy noted that Plaintiff was a good historian. R. 377.

In relying solely on Dr. Rippy's August 11, 2016, opinion to support his contentions, Plaintiff overlooks that symptoms alone cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b). Dr. Rippy's report is replete with references that all of the information contained therein is from Plaintiff's own self-report. Dr. Rippy's prognosis, again based on Plaintiff's self-reported history, states that

> [Plaintiff's] prognosis for improvement of his depression, anxiety, and anger issues in the next 12 months is mixed if he does not receive treatment. He would benefit from specific therapeutic treatment for anger and depression, in addition to medication management, and would likely see some reduction in current symptoms.

R. 380. Dr. Rippy's prognosis is not in conflict with the opinions of Dr. Pearce and Dr. Jones, the agency psychologists on whose opinions the ALJ relied, and further supports the ALJ's RFC that Plaintiff's condition improves with treatment and medication. R. 26.

Considering the mental health records and ALJ's discussion, the Court finds the ALJ performed his duty to review the evidence and make administrative findings of fact and conclusions of law, and to decide Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1513a(b), 404.1527(d)(2),

404.1546(c), 416.913a(b), 416.927(d)(2), 416.946(c). *See also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (ALJ, not physician, charged with determining RFC from medical record). Moreover, an ALJ's RFC assessment is not based on any particular medical or non-medical opinion but must be based on all of the relevant medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2019); SSR 96-8p. The Court finds no error in the ALJ's RFC determination, and finds the RFC's mental limitations supported by substantial evidence.

### B. ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[2]

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. R. 24. Plaintiff alleges the ALJ's analysis was insufficient, because his "decision does not contain a sufficient credibility analysis," and because he failed "to link [medical and hearing] evidence and further weigh the evidence in his consistency findings." ECF No. 13 at 10-11. Plaintiff cites to no part of the record in support of his testimony, citing only to the testimony itself.

The undersigned finds that the ALJ's consistency analysis was proper. After discussing Plaintiff's subjective testimony and objective medical history, the ALJ stated:

> Based on the foregoing, the undersigned finds the claimant has the above RFC assessment, which is supported by the objective medical evidence. The claimant alleged that he cannot see well out of his right eye; however, on June 18, 2016, best corrected visual acuity was **20/50** in the right eye (Exhibit 3F).
>
> The claimant alleges numerous symptoms to include anger, hearing voices, and mania; however, treatment records from **Family and Children's Services** and **Counseling and Recovery Services** do not support his allegations. The claimant did not start medication until February 2017. Mental status examination showed good eye contact, normal speech, logical thought process, normal thought content, and no hallucinations. Judgment was good, insight was good, memory was good, and attention and concentration were good (Exhibit 6F, page 3).

> On April 5, 2017, mental status examination showed memory, attention span, and concentration were good, mood was calm and happy, and affect was normal (Exhibit 8F, page 4).
>
> Mental status examination on June 7, 2018, showed depressed mood, normal affect, goal-directed thought process, and intact memory (Exhibit 9F, page 36). The evidence also shows that when the claimant has symptoms, he has not been taking his medication (Exhibit 9F). The ALJ does not discount all of the claimant's complaints. However, the claimant's treating physicians did not place any functional restrictions on his activities that would preclude light work activity with the previously mentioned restrictions. The claimant's daily activities are consistent with his RFC.

R. 26 (emphasis in original).

The ALJ's consistency analysis was sufficient and legally sound. In reaching his conclusion regarding consistency, the ALJ noted that Plaintiff's statements about the intensity, persistence and limiting effects of his mental symptoms were inconsistent with the objective evidence. R. 24. The ALJ discussed Plaintiff's mental health treatment history, which included medication that reportedly helped improve his mood and sleeping. In August 2018, Plaintiff reported progress with symptoms with the use of medication. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (Commissioner must consider medication effectiveness and other treatments for pain relief when considering statements regarding symptoms).

The ALJ also referred to the more detailed step-two findings indicating that, although Plaintiff alleged difficulty "getting along with others" and anger issues, according to his own statements, Plaintiff is able to shop, spend time with friends and family, use public transportation, go to church, and live with others. The ALJ also noted the medical evidence showed that Plaintiff had a "good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments." R. 21.

Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p. Plaintiff asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489

F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

### C. ALJ Did Not Err in Analyzing VE Testimony

Plaintiff argues the ALJ erred by failing to either follow or discredit the VE's testimony in response to hypothetical questions that included limitations greater than those adopted into the RFC. In particular, the ALJ queried the VE about a hypothetical person who would have a limitation to close supervision with frequent intervention from whomever was in charge, and the VE responded that no competitive work would be available for such a person. R. 62-63.[3]

Plaintiff's argument is without merit. There is no requirement that the ALJ exhaustively analyze the VE's testimony regarding limitations that the ALJ ultimately does not accept into the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1998) (ALJ is not required to discuss every piece of evidence). To the contrary, a VE's testimony may provide substantial evidence to support an ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical question "reflect[s] with precision all of [claimant's] impairments" and limitations that are "borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, "[a]n ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010) (citing *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990)). "By posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the

---

[3] Plaintiff also argued that the ALJ improperly ignored the VE's response to the altered hypothetical presented that included "occasional depth perception." The VE responded that there were no sedentary jobs "that would have occasional depth perception." R. 61. However, the alternate light jobs remained, and Plaintiff does not challenge the "light" RFC. Further, the Court finds no error in the ALJ's RFC, as discussed above. *See Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987) (because substantial evidence supported ALJ's RFC assessment, ALJ's use of VE proper).

13

hypothetical limitations." *Id.* If this were the case, then the ALJ would be precluded from posing more than one hypothetical. *See id.* at 931 n.2. Accordingly, the Court finds no error in the ALJ's analysis of VE testimony.

V. **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 30th day of March, 2021.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**